UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MATTHEW M. JACKSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 3:08-0139 |
| ) | Judge Trauger |
| TOMMY MILLS, WARDEN, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

### I. INTRODUCTION
### AND
### BACKGROUND

The petitioner, proceeding *pro se* and *in forma pauperis*, brings this action under 28 U.S.C. § 2254 seeking federal *habeas corpus* relief. The petitioner names Tommy Mills, Warden at the Northwest Correctional Complex, as the respondent.

On February 26, 2001, the Davidson County Grand Jury indicted the petitioner on six counts of aggravated robbery in violation of Tenn. Code Ann. § 39-13-402. (Add. 1, pp. 000001-8)[1] However, *capias* did not issue until March 9, 2004, following which the petitioner was arraigned on March 24, 2004. (Add. 1, pp. 000009, 17, 40-41) The petitioner moved for a speedy trial on July 14, 2004. (Add. 1, p. 000015)

Thereafter, the petitioner filed a petition to enter a guilty plea on May 12, 2005, reserving a certified question of law as to whether he was denied his right to a speedy trial. (Add. 1, pp. 000054-56; Add. 3, pp. 206-19) The plea was accepted the same day. (Add. 1, pp. 000057-59; Add. 3, p. 218) The petitioner was found guilty on Counts 5 and 6, and sentenced to eight years on both

---

[1] The addenda comprising the state proceedings in this matter were submitted as part of Docket Entry No. 17.

counts, the sentences to run concurrently with one another and with sentences for unrelated offenses entered against him in Robertson County, Tennessee. (Add. 1, pp. 000058-61; Add. 3, p 218) The remaining counts were dismissed. (Add. 1, pp. 58-61) The trial court entered an Order that same day certifying the question regarding whether the petitioner's right to a speedy trial was violated. (Add. 1, pp. 000062-63)

The petitioner filed a notice of appeal on June 8, 2005. (Add. 1, pp. 000064-65) On July 7, 2006, the Tennessee Court of Criminal Appeals (Court of Criminal Appeals) affirmed the trial court's ruling that the petitioner's right to a speedy trial was not violated, following which the Tennessee Supreme Court denied his request for permission to appeal in that Court on November 13, 2006. (Add. 7-8) The petitioner did not file a petition for a writ of *certiorari* in the United States Supreme Court (the Supreme Court).

The petitioner filed a petition for state post-conviction relief on December 19, 2006. (Add. 9, pp. 000014-76) The trial court denied the petition on January 8, 2007, ruling that the petitioner's claims were either waived or had been previously determined. (Add. 9, pp. 77-78). The petitioner appealed. (Add. 9, p. 000079) The petitioner raised only his speedy trial claim on appeal, in response to which the State moved to affirm as a matter already determined. (Add. 10-11) The Court of Criminal appeals affirmed the judgment of the trial court on August 27, 2007, following which the Tennessee Supreme Court denied the petitioner's request for permission to appeal. (Add. 12) Again, the petitioner did not file a petition for a writ of *certiorari* in the Supreme Court.

The petitioner filed the instant action on February 13, 2008. He raises the following grounds for relief in his petition:

> 1) His confession was involuntary because the police disregarded his right to remain silent, and his request for

2

counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments (Docket Entry No. 2, p. 9);

2) Metro-Nashville police officers conducted a warrantless search of his residence and automobiles in violation of his rights under the Fourth Amendment (Docket Entry No. 2, pp. 17-18);

3) He was denied his right to a speedy trial in violation of his rights under the Sixth and Fourteenth Amendments (Docket Entry No. 2, pp. 20-21, 23);

4) The trial court erred in reaching factual conclusions unsupported by the record (Docket Entry No. 2, pp. 26-30); and

5) The trial judge was biased (Docket Entry No. 2, pp. 32-36).[2]

The respondent filed a motion to dismiss on April 11, 2008, a supporting memorandum of law, and a copy of the record of proceedings in state court. (Docket Entry No. 14-15, 17) The petitioner filed a traverse on April 30, 2008. Rule 3(d), Rules – Section 254 Cases.

## II. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the

---

[2] The pages corresponding to this ground for relief are unnumbered, but follow page 31 in sequence.

3

>    merits in State court proceedings unless the adjudication of the claim –
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Finally, under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A. Petitioner's Speedy-Trial Claim

The respondent argues that the Court of Criminal Appeals's adjudication of this issue did not "result[] in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law or . . . that was based on an unreasonable determination of the facts in light

4

of the evidence presented." (Docket Entry No. 15, p. 17)

*Barker v. Wingo*, 407 U.S. 514 (1972) controls in those instances where a criminal defendant alleges that his right to a speedy trial has been violated. *See U.S.A. v. Gardner*, 488 F.3d 700, 719 (6th Cir. 2007). *Barker* provides a four-part test for courts to use in assessing speedy trial claims. Those considerations are: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted his right to a speedy trial; and 4) whether prejudice to the defendant resulted. *Barker*, 497 U.S. at 523-530. None of the factors alone is enough to establish a violation; the court is required to balance its analysis of these factors along with such other factors as may be relevant. *United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006)(citing *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003)). The first factor, however, is the threshold inquiry. If there was no delay then there is no need for further inquiry. *Schreane*, 331 F.3d at 553 (citing *Barker*, 407 U.S. at 530)).

A review of the record shows that the Court of Criminal Appeals correctly identified *Barker* as controlling where claims are raised alleging that the right to a speedy trial has been violated, and that the Court of Criminal Appeals analyzed this claim under *Barker's* four-part test. (Add. 7, pp. 3-5). Citing *Doggett v. United States*, 505 U.S. 647, 652 (1992), the Court of Criminal Appeals first determined that the three-plus year delay between the indictment being returned against the petitioner and service of *capias* crossed the threshold necessary to "trigger the full speedy trial analysis . . . ." (Add. 7, p. 4)

Just as the Court of Criminal Appeals decided the first part of the four-part *Barker* test in the petitioner's favor, it determined that, "[b]ecause the State offered no valid reason for the delay in serving the capias, th[e] [second] factor . . . weighed favorably for the Defendant . . . ." (Add. 7, p.

5

4) The Court of Criminal Appeals also determined the third part of the four-part *Barker* test in the petitioner's favor as well, finding that, because he was "unaware of the charges contained in the indictment until three years after its return," he "'cannot be penalized for failing to assert his speedy trial right earlier.'" (Add. 7, p. 4)

In addressing the fourth part of the four-part *Barker* test, the Court of Criminal Appeals noted that prejudice due to the delay "is the most important" factor. (Add. 7, p. 4) Quoting *Barker*, the Court of Criminal Appeals went on to establish that "'[p]rejudice . . . should be assessed in the light of the interests . . . the speedy trial right was designed to protect,' which are '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" (Add. 7, p. 4) Also quoting *Barker*, the Court of Criminal Appeals went on to note further that "[t]he last of these three is the most serious because of its potential 'skew[] the fairness of the entire system.'" (Add. 7, pp. 4-5)

The Court of Criminal Appeals summarized the circumstances relevant to the petitioner's speedy trial claim as follows:

> The facts in this case are largely undisputed. On October 9, 2000, the Defendant was arrested in Springfield, Tennessee, following the robbery of a Video Checkout Store and rape of a store employee. The Defendant was subsequently interviewed by numerous law enforcement officials from Kentucky and other counties in Tennessee, including Davidson County, for his suspected involvement in similar video store robberies. From the time of his October 9th, 2000, arrest, the Defendant has been in the continuous custody of either Tennessee or Kentucky authorities.
>
> On October 10, 2000, Detective William Stewart of the Nashville Police Department interviewed the Defendant regarding his involvement in six late-night robberies of Nashville-area video stores between December 1999 and August 2000, the offenses which are the subject of the present appeal. Based upon information obtained during the interview, Detective Stewart obtained warrants against the

6

Case 3:08-cv-00139   Document 23   Filed 05/12/08   Page 6 of 12 PageID #: 1545

> Defendant. It appears from the record that the warrants were never served on the Defendant, as they were "recalled" in June of 2001.
>
> Detective Stewart appeared before a Davidson County grand jury on February 26, 2001, and an indictment was returned against the Defendant, charging him with six counts of aggravated robbery. Detective Stewart testified that he was not involved in service of the indictment. Regarding process on the indictment, service of the capias did not occur until March 9, 2004. Thereafter, on March 24, 2004, the Defendant was arraigned on the Davidson County robbery charges.
>
> Meanwhile, in May of 2001, the Defendant pled guilty in the Robertson County Circuit Court to aggravated kidnapping, aggravated robbery, theft of property over $500.00, and two counts of aggravated rape. In July of 2001, he received an effective twenty-five-year sentence for these offenses. In Sumner County, Tennessee, on August 10, 2001, the Defendant pled guilty to four counts of aggravated robbery, and an effective sentence of ten years was imposed in accordance with the negotiated plea agreement. Following his guilty pleas in Robertson and Sumner Counties, the Defendant was extradited to Kentucky, as authorities there had placed a "hold" on the Defendant regarding video store robberies in Bowling Green. The Defendant was convicted by a Kentucky jury in August of 2003 of three counts of first-degree robbery by complicity and three counts of burglary by complicity. The Kentucky jury recommended an effective sentence of sixty years. At some point thereafter, the Defendant was returned to Tennessee authorities.

(Add. 7, pp. 1-2)(internal citations omitted)[3]

From the foregoing facts, the Court of Criminal Appeals determined that "[t]he defendant's continuous incarceration was not the result of these proceedings alone," and that, because of the numerous other criminal actions pending against him during the time frame at issue, he "could suffer little anxiety . . . if he was unaware of the[]" charges that are the subject of the petitioner's speedy

---

[3] These facts are fully supported by the record. (Add. 1, pp. 000016-20, 32, 40-41; Add. 2, pp. 15-16, 58, 70, 81, 83, 85, 87-88, 97, 106; Add. 3, pp. 112, 130-31, 148, 165-66, 169-70, 175-76, 179, 181-82, 189-98, 203; Add. 5, pp. 3-6; Add. 10, pp. 7-31)

7

trial claim. (Add. 7, p. 5) Based on the record, the Court of Criminal Appeals correctly determined factors i and ii against the petitioner. As to factor iii, in a lengthy analysis of the physical evidence, the witnesses, an assessment of the effect of time on both, as well as the fact that the petitioner's concurrent sentences did not add to his overall term of imprisonment, the Court of Criminal Appeals found that the delay did not prejudice the petitioner's ability to prepare an appropriate defense. (Add. 7, p. 5) In affirming the judgment of the trial court, the Court of Criminal Appeals wrote: "[W]e conclude that the Defendant's right to a speedy trial has not been violated," and that "the trial court did not err by denying the motion to dismiss the indictment." (Add. 7, p. 5)

The Court of Criminal Appeals made numerous findings of fact in affirming the judgment of the trial court on this issue. The petitioner has not rebutted those factual determinations by clear and convincing evidence, or otherwise. Moreover, the Court of Criminal Appeals' determination of this issue was neither contrary to, nor an unreasonable application of clearly established Federal law. Accordingly, this claim is without merit.

### Certificate of Appealability

When, as here, the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has failed to make substantial showing of the denial of a constitutional right, a COA will not issue on this claim.

### B. Petitioner's Remaining Claims

The respondent argues that the petitioner's remaining claims are procedurally defaulted for purposes of federal *habeas corpus* review. (Docket Entry No. 14, p. 1; No. 15, pp. 10-12)

The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that a *habeas* petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed unexhausted and are ordinary dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

A review of the record shows that, although the petitioner raised these issues prior to pleading guilty and in his post-conviction petition (Add. 1, pp. 000013-14, 16, 25-27, 32-40, 50-54; Add. 2-3, Add. 9, pp. 000029-41, 48-53), he did not raise them in the state appellate courts (Add. 5, 10). Consequently, the petitioner's remaining four grounds for relief are unexhausted. The next question is whether they are procedurally defaulted under state law.

Tennessee's post-conviction statute in effect at the time the petitioner filed his post-conviction petition, Tenn. Code Ann. § 40-30-102, provides that a state prisoner must file a petition for post-conviction relief within one year of the date that his conviction becomes final on direct appeal, and that he may not file more than one petition. *Id.* at §§ (a), (c). A petitioner may,

9

however, move to reopen a post-conviction proceeding that has been concluded if the motion is based on: 1) a final ruling of an appellate court establishing a new constitutional right that was not recognized at the time of trial; 2) new scientific evidence that establishes the petitioner actually is innocent; 3) a sentence that was enhanced because of a previous conviction that was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid; and 4) the facts underlying the claim, if true, provide clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced. Tenn. Code Ann. §§ 40-30-117(a)(1)-(a)(4).

Because the petitioner has filed one post-conviction petition, he may not file another. Moreover, none of the "limited circumstances" provided in §§ 40-30-117(a)(1)-(a)(4) apply to the petitioner's remaining claims. Therefore, the motion-to-reopen provision in § 40-30-102(c) is inapplicable. For these reasons, the petitioner's remaining claims are procedurally defaulted under state law. The next question is whether it is procedurally defaulted for purposes of federal *habeas corpus* review.

If a claim is procedurally defaulted, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" <u>and</u> "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477

10

U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id.*, and requires a petitioner to show that he is "actually innocent," *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The petitioner has failed to establish cause and prejudice in his traverse. Neither has he shown that a fundamental miscarriage of justice will occur if the court does not review these four remaining claims. Consequently, the petitioner's remaining claims are procedurally defaulted for purposes of federal *habeas corpus* review.

### Certificate of Appealability

Where, as here, a district court denies claims in a *habeas corpus* petition on procedural grounds without reaching the merits of the petitioner's underlying constitutional claims, a certificate of appealability will issue only if the petitioner can show: 1) that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right; and 2), that jurists of reason would find it debatable whether the procedural ruling was correct. *Slack*, 529 U.S. at 484. The court has conducted an independent analysis of the petitioner's four remaining claims, and finds that jurists of reason would not disagree with the court's determination that these claims

11

are procedurally defaulted for purposes of federal *habeas corpus* review.  Consequently a COA will not issue as to any of these claims.

### III.  CONCLUSION

For the reasons stated herein, the respondent's motion to dismiss will be granted, the petition will be denied, and this action will be dismissed with prejudice.  For the reasons also stated herein, should the petitioner seek a COA on any of the issues raised, his request will be denied.

An appropriate Order will be entered.

Aleta A. Trauger
United States District Judge